**BLESSING v. JACOBSON.**

No. 14478.

United States Court of Appeals
Eighth Circuit.

May 12, 1952.

Rehearing Denied June 16, 1952.

Glenn E. McCann, Kansas City, Mo., for appellant.

W. Raleigh Gough, Kansas City, Mo., for appellee.

Before SANBORN, JOHNSEN and COLLET, Circuit Judges.

COLLET, Circuit Judge.

The sole question involved on this appeal is whether there was adequate evidence of agency to justify the submission of that question to the jury. The facts concerning the nature of the case and the proceedings in the trial court are tersely and accurately stated in appellant's brief and adopted by appellee. We substantially adopt that statement.

"This case is an action by Virginia M. Blessing (Brown), Plaintiff, as the widow of Ernest M. Blessing, deceased, in which she is seeking $15,000 damages for the 'wrongful death' of her husband, Ernest M. Blessing, through operation of the 'Wrongful Death' Statute of Missouri, [Missouri Statutes Annotated 1939, Sections 3652, 3653, 3654, as amended in 1945, and Section 36 as re-enacted in 1947, V.A. M.S. §§ 537.070 to 537.090, 461.170].

"The defendant is Joseph P. Jacobson, owner of the Jacobson Flying Service and owner of a Piper Cub-Cruiser airplane, No. NC3158N, which crashed near Warsaw, Missouri, on July 31, 1949. The plane was piloted by James K. Bakert and was carrying as passengers Ernest M. Blessing and Rita Robison. All occupants were killed as a result of this crash.

"The plaintiff contends that the pilot, James K. Bakert, was an employee of the defendant, Joseph P. Jacobson, at the time of the crash and was acting within the scope of his employment; that the death of the plaintiff's husband was caused by the negligent acts of employee Bakert and consequently the defendant is liable for damages. The doctrine of Respondeat Superior applies to the facts of the case. Plaintiff further contends that James K. Bakert was in the general employ of the defendant. Defendant denies that Bakert was an employee acting within the scope of his employment at the time of the crash, but contends that Bakert was engaged entirely in a mission of his own.

"The case was tried before a jury and resulted in a mistrial on May 23, 1951, since the jury could not agree to a verdict. At the close of plaintiff's case and at the close of all the evidence, defendant filed a motion for directed verdict on two grounds:

"1. That there was no competent evidence showing that the pilot Bakert

was an employee of defendant acting within the course and scope of his employment at the time of the accident; and

"2. That there was no competent evidence substantiating the charges of negligence made against defendant or against Bakert.

"The trial court took this motion under consideration but submitted the case to the jury. Subsequently, defendant filed a Motion for Judgment Under the Evidence, Notwithstanding Mistrial, on the two grounds specified in the Motion for Directed Verdict. The Court thereafter on July 5, 1951, sustained this motion on the first ground only, that is, on the ground that there was no evidence that Bakert was an employee of defendant acting within the course and scope of his employment, and rendered judgment dismissing plaintiff's cause."

In determining whether there was sufficient evidence to justify submitting the question of agency to the jury we must consider the evidence in the light most favorable to the plaintiff.

The pilot of the plane, Mr. Bakert, was one of the defendant's regular instructors in defendant's flying school. He was in defendant's general employment and usually worked every day of the week. Monday was his regular day off, but he ordinarily worked that day also because he needed the money. He was one of ten or twelve instructors. He, like other instructors, participated in soliciting students for the school. The greater number of students who enrolled for flight instruction did so as a result of the solicitation of instructors. The instructors were paid entirely on an hourly basis when they were engaged in instructing students. Therefore, it was to the financial advantage of both the instructor and defendant to secure students. And a student who enrolled at the instance of a particular instructor was assigned to that instructor. Instructors were paid $3.00 per hour for "dual flying time" and $1.00 per hour for solo instruction and flying time. Plaintiff's deceased husband was formerly in the military service and

had, as a result of the solicitation of Bakert, applied for enrollment as a G. I. student in defendant's school for training for a pilot's license. Defendant's school had been approved by the Veterans' Administration for such instruction and training. It was necessary to the formal enrollment that the application, accompanied by a medical certificate, be approved by the Veterans' Administration. The application was forwarded to the Veterans' Administration and on July 29, 1949, defendant received a letter from the Veterans' Administration calling attention to the fact that the medical certificate had not been attached. Final approval of the application had not been obtained prior to the fatal accident and hence Blessing was not a formally enrolled student. It was the practice, engaged in occasionally and with defendant's approval, for instructors to take prospective students for short rides of a few minutes to encourage enrollment. There was to be a celebration at Camdenton, Missouri, on Sunday, July 31, 1949, when a new airport at that place was to be formally opened. Bakert asked Mr. Jacobson's permission to take the plane to the celebration. That permission was granted. Defendant's evidence as to the nature of the request and the permission that was granted definitely places Bakert beyond the scope of any employment by defendant. But since the jury was not required to accept defendant's version of the transaction, we must disregard, for present purposes, the facts supporting defendant's position. Defendant knew when Bakert requested permission to take the plane to Camdenton that Bakert intended to take two "friends" with him and saw Blessing and another get in the plane with Bakert at the time they took off at Kansas City. On the morning of July 31, Bakert left home at the time he usually did on working days and was expected home that evening. He, Blessing, and the other passenger flew to Camdenton, and on their return trip to Kansas City that afternoon the fatal crash occurred.

Defendant's evidence so definitely and clearly indicates that the trip was a private enterprise of Bakert's that if the jury had accepted it at full value there

could not be much question about what the verdict would or should have been. But such comment is not appropriate on our part as indicative of any conclusion we may have on the merits of the issue and is not made for that purpose. We express no opinion on the merits of the issue. Our comment is made only for the purpose of indicating the possible or probable effect the defendant's evidence had upon the trial court's ruling. And we recognize the practical difficulty· of eliminating from consideration the impressions made on a trial court by the attitude of the witnesses when testifying, and the impressions they give of verity, candor and frankness. But we are not confronted with such difficulties from an examination of a printed record. Our examination of the record before us leads us to the conclusion that reasonable minds might well differ on the question of whether the trip to Camdenton was for the mutual benefit of Bakert and defendant, and an incident to his general employment by defendant. And reaching that conclusion we must hold that it was a jury question.

Other facts to which our attention has been directed by plaintiff, which do not, upon analysis, in our judgment materially affect the conclusion we reach, have been omitted. Likewise, for reasons already repeatedly stated, the facts developed by defendant supporting his position are not reviewed.

For the reason stated, the judgment of the trial court is reversed and the cause remanded for further proceedings not inconsistent herewith.